UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CV-20819

ALFRED MUNOZ,

    Plaintiff,

vs.

VILLAGE OF BISCAYNE PARK,

    Defendant.
_____/

## **COMPLAINT**

Plaintiff, Alfred Munoz, brings this action to address the conduct by Defendant, Village of Biscayne Park, as follows:

### *Parties, Jurisdiction, and Venue*

1.     **Plaintiff, Alfred Munoz ("Munoz")**, was and is a resident of Miami-Dade County, at all times material, and he is *sui juris*.

2.     **Defendant, Village of Biscayne Park ("Biscayne Park")**, is a municipality within Miami-Dade County, Florida, and it is *sui juris*.

3.     This Court has original jurisdiction over Mr. Munoz's claims that arise under federal law and supplemental / pendent jurisdiction over his related state law claim(s).

4.     Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Biscayne Park is located within this District and because most of the actions complained of occurred within this District.

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

## *Background Facts*

5. Munoz faithfully and honorably served our country as a member of the United States Army.

6. Munoz served in active duty for 11 years and two months before receiving an honorable discharge from the United States Army.

7. Munoz underwent a psychological evaluation on January 9, 2015 prior to being hired by Biscayne Park. That pre-employment psychological evaluation resulted in the conclusion that Munoz possessed no psychological impediment to serving as a law enforcement officer. Consequently, Munoz received an "Acceptable Ranking".

8. Although Munoz was partially disabled as a result of his military service, he was otherwise qualified for the position of Police Officer with Biscayne Park.

9. Munoz was otherwise qualified to work as a police officer; he passed all background investigations, passed all physical examination, and had all necessary education, training, and certifications to work in Florida as a police officer.

10. Biscayne Park hired Munoz as a reserve Police Officer in February 2015, during which time Munoz consistently received satisfactory evaluations from the Biscayne Park police officers who were responsible for supervising and evaluating him.

11. Munoz also received no citizen complaints or disciplinary actions while working as a reserve Police Officer for Biscayne Park.

12. Biscayne Park thereafter entered into a Training Agreement with Munoz on or about April 5, 2015, in which it agreed to pay him a set salary in exchange for his working for Biscayne Park as a Police Officer trainee.

13. On or about April 5, 2015, Biscayne Park hired Munoz as a full-time, active

2

Police Officer.

14. Biscayne Park's former Chief of Police authorized Munoz to work on his own, during the day shift(s), as of April 14, 2015.

15. Munoz thereafter continued to have a stellar work history with Biscayne Park; he received no adverse employment actions, had no citizen complaints, received discipline, and was not the subject of any internal affairs investigation(s) during his employment tenure with Biscayne Park.

16. Unfortunately, Munoz was routinely subjected to harassment and was discriminated against while working at Biscayne Park by being subjected to ridicule and disparaging commentary about disabled veterans (like Munoz) and those with Post Traumatic Stress Disorder ("PTSD") (which they regarded Munoz as having), and Munoz routinely reported these issues to supervisory personnel.

17. Supervisory personnel not only ignored his complaints, but they also engaged in the same type of conduct about which Munoz complained.

18. The Village Manager for Biscayne Park expressed concerns about Munoz's service in the United States Armed Forces. In particular, she was concerned that Munoz would be "too aggressive" because of her bias that most members of the United States Armed Forces have PTSD.

19. The situation got so bad during Munoz's employment that, in response to Munoz having raised concerns about being harassed and discriminated against because he is a veteran and because others "thought" or "regarded him" as having PTSD, the acting/former Chief of Police changed Munoz's take-home vehicle to protect Munoz.

20. Biscayne Park requested that Munoz resign from his employment on January 15,

3

2016, and informed Munoz that his employment would be terminated if he did not resign.

21. Biscayne Park constructively terminated Munoz's employment as result of his raising concerns about being about being harassed and discriminated against, and in connection therewith, informed the Florida Department of Law Enforcement on the Affidavit of Separation that his was a "Voluntary separation not involving misconduct".

22. All conditions precedent have been performed by Munoz, occurred, or waived by Biscayne Park.

23. Munoz retained the undersigned counsel and agreed to pay his counsel a reasonable fee for all services rendered.

## COUNT I –DISABILITY DISCRIMINATION
## IN VIOLATION OF TITLE II OF THE ADA

Plaintiff, Alfred Munoz, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

24. Title II of the ADA prohibits discrimination by an employer against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

25. Biscayne Park was at all times material an "employer", as the term is defined by the ADA.

26. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; ... or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

27. Biscayne Park "regarded" Mr. Munoz as disabled as a result of its considering him to have PTSD.

28. Biscayne Park further discriminated against Munoz as a result of his service-

4

related disabilities, for which Munoz received a 40% disability rating.

29. Mr. Munoz was, nonetheless, still qualified to perform the functions of a Police Officer with Biscayne Park.

30. Biscayne Park was a "covered entity" that discriminated against Mr. Munoz "on account of" his (perceived) disability and/or "on account of" his actual disability.

31. Biscayne Park never performed any study, analysis, or determined whether it could accommodate any perceived or actual disability of Munoz.

32. Biscayne Park improperly subjected Munoz to ridicule and harassment in his work and then constructively discharged him from his employment because it regarded him as having PTSD, which it further perceived to be a disability.

33. Biscayne Park knew or should have known of the harassment that Munoz endured, as a result of his complaints and the pervasive nature of this conduct, but failed to take prompt and effective remedial action in response thereto.

34. Munoz thereafter applied for (re-)employment with Biscayne Park.

35. Biscayne Park rejected Munoz's re-application of employment in February of 2017 as a direct and proximate result of its regarding him as disabled.

36. Biscayne Park's acts of omission and/or of commission violated the ADA, which prohibits discrimination against persons who are disabled, who have a record of disability, or who are regarded as disabled.

37. As a direct and proximate result of Biscayne Park's conduct as described above, Munoz incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish as a direct and proximate result of Biscayne Park's conduct.

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT II – UNLAWFUL RETALIATION IN VIOLATION OF TITLE II OF THE ADA

Plaintiff, Alfred Munoz, reincorporates and re-alleges paragraphs 1 through 23 as though set forth fully herein and further alleges as follows:

38. Title II of the ADA prohibits discrimination by an employer against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

39. Biscayne Park employed Munoz at all times material and so was his "employer" as the term is defined by the ADA.

40. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; ... or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

41. Biscayne Park "regarded" Mr. Munoz as disabled as a result of its considering him to have PTSD.

42. Biscayne Park further discriminated against Munoz as a result of his service-related disabilities, for which Munoz received a 40% disability rating.

6

43. Mr. Munoz was, nonetheless, qualified to perform the functions of a Police Officer with Biscayne Park.

44. Biscayne Park was a "covered entity" that discriminated against Mr. Munoz "on account of" his (perceived) disability and/or "on account of" his actual disability.

45. Biscayne Park never performed any study, analysis, or determined whether it could accommodate any perceived or actual disability of Munoz.

46. Biscayne Park improperly subjected Munoz to ridicule and harassment in his work and then constructively discharged him from his employment because it regarded him as having PTSD, which it regarded as a disability.

47. Biscayne Park knew or should have known of the harassment that Munoz endured, as a result of his complaints and the pervasive nature of this conduct, but failed to take prompt and effective remedial action in response thereto.

48. Munoz thereafter applied for (re-)employment with Biscayne Park.

49. Biscayne Park rejected Munoz's re-application of employment in February of 2017 as a direct and proximate result of his complaints about being discriminated against for being regarded as disabled.

50. Biscayne Park's acts of omission and/or of commission violated the ADA, which prohibits employment discrimination against persons who are disabled, who have a record of disability, or who are regarded as disabled.

51. As a direct and proximate result of Biscayne Park's conduct as described above, Munoz incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish as a direct and proximate result of Biscayne Park's conduct.

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT III – DISCRIMINATION
## IN VIOLATION OF §504 OF THE REHABILITATION ACT

Plaintiff, Alfred Munoz, reincorporates and re-alleges paragraphs 1 through 23 as though set forth fully herein and further alleges as follows:

52. Biscayne Park is a municipality that received federal financial assistance at all times material to this action, as defined by 29 U.S.C. §794.

53. Biscayne Park is subject to §504 of the Rehabilitation Act pursuant to 29 U.S.C. §794a.

54. Section 504 of the Rehabilitation Act provides in pertinent part:

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. §794(a) (emphasis added).

55. Section 504 of the Rehabilitation Act also defines "individual with a disability" as any person who:

(i) has a physical or mental impairment which substantially limits one or more of such

person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

29 U.S.C. §705(20)(B).

56. In turn, "major life activities" are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3).

57. Biscayne Park improperly subjected Munoz to ridicule and harassment in his work and then constructively discharged him from his employment because it regarded him as having PTSD, which it considered to be a mental impairment that substantially limited his major life activities.

58. Munoz thereafter applied for (re-)employment with Biscayne Park.

59. Biscayne Park then improperly rejected Munoz's application for (re-)employment in February 2017 as a direct and proximate result of its regarding him as having PTSD and/or an impairment that substantially limits his major life activities.

60. Biscayne Park's acts of omission and/or of commission violated the Rehabilitation Act.

61. As a direct and proximate result of Biscayne Park's conduct as described above, Munoz incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish as a direct and proximate result of Biscayne Park's conduct.

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position

he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT IV – RETALIATION
## IN VIOLATION OF §504 OF THE REHABILITATION ACT

Plaintiff, Alfred Munoz, reincorporates and re-alleges paragraphs 1 through 23 as though set forth fully herein and further alleges as follows:

62. The Village of Biscayne Park is a municipality that received federal funding at all times material to this action.

63. Section 504 of the Rehabilitation Act provides in pertinent part:

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. §794(a) (emphasis added).

64. Section 504 of the Rehabilitation Act also defines "individual with a disability" as any person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B).

65. In turn, "major life activities" are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

29 C.F.R. § 1614.203(a)(3).

10

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

66. The anti-discrimination provision of the Rehabilitation Act incorporates the anti-retaliation provision of the ADA.

67. Biscayne Park retaliated against Munoz in response to his having complained about being the subject of discrimination and harassment about his suffering from or being regarded as suffering from PTSD, thereby violating the Rehabilitation Act.

68. As a direct and proximate result of Biscayne Park's conduct as described above, Munoz incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish as a direct and proximate result of Biscayne Park's conduct.

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## COUNT V – VIOLATION OF USERRA

Plaintiff, Alfred Munoz, reincorporates and re-alleges paragraphs 1 through 23 as though set forth fully herein and further alleges as follows:

69. This is a claim brought pursuant to the United Serves Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§4301-4333 ("USERRA").

70. Biscayne Park regarded Munoz as disabled due to a mistaken belief that he

11

suffered a service-connected disability (PTSD).

71. Biscayne Park violated USERRA by, amongst other ways, the following:

   a. Constructively terminating Munoz's employment as a result of his military service and/or the mistaken belief that he suffered a service-connected disability (PTSD); and/or

   b. Failing or refusing to re-employ Mr. Munoz upon his re-application for employment in 2017.

72. As a direct and proximate result of Biscayne Park's conduct, and its reckless disregard of Munoz's rights under USERRA, Munoz incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish as a direct and proximate result of Biscayne Park's conduct.

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## **COUNT VI – VIOLATION OF FRCA**

Plaintiff, Alfred Munoz, reincorporates and re-alleges paragraphs 1-23 as though set forth fully herein and further alleges as follows:

73. Biscayne Park "regarded" Mr. Munoz as disabled as a result of its considering him

12

to have PTSD.

74. Biscayne Park further discriminated against Munoz as a result of his service-related disabilities, for which Munoz received a 40% disability rating.

75. Mr. Munoz was, nonetheless, qualified to perform the functions of a Police Officer with Biscayne Park.

76. Biscayne Park was a "covered entity" that discriminated against Mr. Munoz "on account of" his (perceived) disability and/or "on account of" his actual disability.

77. Biscayne Park never performed any study, analysis, or determined whether it could accommodate any perceived or actual disability of Munoz.

78. Biscayne Park improperly subjected Munoz to ridicule and harassment in his work and then constructively discharged him from his employment because it regarded him as having PTSD.

79. The ridicule and harassment that Munoz endured was so severe and pervasive that it altered the conditions of his employment and created an abusive working environment.

80. Biscayne Park knew or should have known of the harassment that Munoz endured, as a result of his complaints and the pervasive nature of this conduct, but failed to take prompt and effective remedial action in response thereto.

81. Biscayne Park's acts of omission and/or of commission violate of the ADA, which prohibits employment discrimination against persons who are disabled, who have a record of disability, or who are regarded as disabled.

82. There were other Police Officers who were similarly situated to Munoz employed by Biscayne Park who were not regarded as having PTSD and/or who did not have a documented impairment and who were treated better than Munoz, who were not ridiculed, and

7300 N. Kendall Drive, Suite 450, Miami, FL 33156
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

who were not constructively terminated from their employment.

WHEREFORE Plaintiff, Alfred Munoz, demand the entry of a judgment in his favor and against Defendant, Village of Biscayne Park, after trial by jury, for compensatory damages, including for damages to his reputation, emotional distress damages, to be placed in the position he would be in, but for the unlawful discrimination, through either reinstatement or lost past and future wages and employment-related benefits, the grant of injunctive relief prohibiting the Village of Biscayne Park from discriminating against him and reinstating him to his employment during this litigation, his attorneys' fees, costs, and all interest allowed by law, and such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Alfred Munoz, demands a trial by jury of all issues so triable.

Dated this 5th day of March, 2018.

                Respectfully Submitted,

                FAIRLAW FIRM
                7300 N. Kendall Drive
                Suite 450
                Miami, FL 33156
                Tel:    305.230.4884
                Fax:   305.230.4844

                s/Brian H. Pollock, Esq.
                Brian H. Pollock, Esq.
                Fla. Bar No. 174742
                brian@fairlawattorney.com

                      *and*

                GALBUT WALTERS & ASSOCIATES, LLP
                4770 Biscayne Blvd.
                Suite 1400
                Miami, FL 33137
                Tel: (305) 672-3100
                Fax: (305) 531-6987
                s/ Michael Joseph, Esq.
                Michael Joseph, Esq.
                Fla. Bar No.: 0086776
                mjoseph@galbutwalters.com